UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| TRACEY WHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00244-JPH-MG |
| | ) | |
| ZATECKY Warden, | ) | |
| ROBERT CARTER, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Tracey Wheeler alleges that he was subjected to unconstitutional conditions of confinement in the form of excessive heat at Putnamville Correctional Facility. He further alleges that the Warden retaliated against him for filing grievances and complaining to IDOC officials about the conditions at Putnamville.

Defendants Dushan Zatecky and Robert Carter have moved for summary judgment. For the following reasons, that motion, dkt. [32] is **GRANTED**.

# I.
# Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565,

1

572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. Wheeler failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is

2

proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the designated evidence in the light most favorable to Mr. Wheeler and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

At all times relevant to Mr. Wheeler's complaint, Warden Zatecky was the warden at Putnamville and Defendant Carter was the Indiana Department of Correction ("IDOC") commissioner. Dkt. 23 at 1 (Answer); dkt. 33-2 at ¶ 2 (Zatecky Aff.). Mr. Wheeler was housed at Putnamville from March 2021 until March 2022. Dkt. 33-1 at 7 (Wheeler Dep.). Putnamville is a level-2 IDOC correctional facility. *Id.*

### A. Heat-Related Conditions at Putnamville

At Putnamville, Mr. Wheeler and several hundred other inmates were housed in a dormitory-style unit that did not have air conditioning. *Id.* at 8; 10; dkt. 33-2 at ¶ 3. During the warmer months, inmates were allowed to take cold showers whenever they wanted, fans were installed, and windows were usually kept open to allow air flow. Dkt. 33-2 at ¶ 4. IDOC staff retained the authority, however, to close windows if they determined that keeping them open posed a security threat. *Id.* For instance, many inmates would yell at people or throw things through the windows. *Id.*

3

Mr. Wheeler testified that during the summer of 2021, it was "[h]ot. It was over 100 degrees almost every day during the summer. There was no ventilation and essentially no fans." Dkt. 33-1 at 10. Mr. Wheeler testified that there were four fans in his housing unit, but they were often broken. *Id.* at 23. Mr. Wheeler filed a grievance about the temperature in the dorm on August 18, 2021, in which he complained that sergeants were closing window grates whenever inmates were caught talking out of the window. Dkt. 33-3 at 4. In response to Mr. Wheeler's grievance appeal, Warden Zatecky stated, "Staff are allowed to close the grates at their discretion. The windows are to remain open (weather permitting) to ensure air flow. However, Major Crabb has given authorization to shut the grates when staff deem it necessary." *Id.* at 1.

Mr. Wheeler testified that the heat caused him difficulty breathing, heat exhaustion, nausea, headaches, and sweating. Dkt. 33-1 at 17, 26. Mr. Wheeler could take cold showers for relief from the heat and he could "get water at any time" unless Putnamville was on lockdown. *Id.* at 17, 26. Further, Mr. Wheeler acknowledged that the windows in the dorm were generally left open in the summertime months. *Id.* at 21.

Mr. Wheeler claims that Commissioner Carter visited Putnamville on October 14, 2021, and that inmates were yelling at him through the windows. *Id.* at 18. Mr. Wheeler was told by an IDOC staff member (who was responding to a grievance) that Commissioner Carter ordered that the windows be closed. *Id.* The windows were closed that day for about 12 to 14 hours. *Id.*

Mr. Wheeler wrote a letter to Commissioner Carter complaining that the living areas in Putnamville were so hot that it was causing inmates to get into fights over fans. *Id.* at 21. Commissioner Carter personally responded, but Mr. Wheeler could not remember what he said.[1] *Id.* at 22.

### B. Access to Clean Clothing

In August 2021, Mr. Wheeler's laundry was misplaced, so he was left without clean clothes for about ten days. Dkt. 33-1 at 36. Mr. Wheeler filed grievances about his laundry and eventually received new clothes. *Id.* at 38. Mr. Wheeler testified that he suffered from skin irritation from wearing the dirty clothes for ten days, but he did not receive medical attention for that condition. *Id.* at 38-39.

Warden Zatecky was not involved in the laundry department at Putnamville. Dkt. 33 at ¶ 5. When he received complaints from an inmate about laundry, he would contact the captain in charge of the laundry room. *Id.*

Mr. Wheeler filed a grievance about his laundry on August 29, 2021, stating that his clothing went missing on August 24. Dkt. 33-5 at 4. The grievance was denied, and Mr. Wheeler appealed, noting that he did not receive clean clothing until September 3. *Id.* at 1. On October 13, 2021, Warden Zatecky upheld the denial of the grievance on appeal. *Id.*

### C. Transfer and Clemency Requests

Mr. Wheeler requested to be transferred to a level-1 minimum-security

---

[1] Neither the correspondence between Mr. Wheeler and Commissioner Carter nor the grievance referencing Commissioner Carter is in the parties' designated evidence.

facility in April of 2021. Dkt. 33-1 at 29. He believes that Warden Zatecky did not like that Mr. Wheeler filed grievances and complained about the conditions at Putnamville, so "[Warden Zatecky] made up stuff...said that [Mr. Wheeler] beat up police, the guards, and had Class A write-ups and none of that stuff existed." Dkt. 33-1 at 29. Mr. Wheeler stated that he was denied a transfer because of the false allegations, but he did not know who made them. *Id.* at 30. Mr. Wheeler also claims that Warden Zatecky wrote a letter that affected his application for clemency in which Warden Zatecky mentioned that Mr. Wheeler had Class A write-ups. *Id* at 33. While he never received a Class A write-up, Mr. Wheeler acknowledged receiving several Class B write-ups for possessing a cellphone. *Id.* at 34-35.

  Warden Zatecky generally was not involved with inmate transfer requests at Putnamville. Dkt. 33-2 at ¶ 6. Inmates requesting a transfer would file a request with the classification department at IDOC central office, who would consult with the unit team at Putnamville to process the request. *Id.* at ¶ 7. At any given time, there were 200-300 inmates requesting and waiting to be transferred to a lower-level security facility. *Id.* at ¶ 8. Warden Zatecky would only contact IDOC central office to request an inmate be transferred if that inmate had been involved in an assault. *Id.* at ¶ 6. He never requested a transfer for Mr. Wheeler and was not involved in denying any of his requests for transfer. *Id.* at ¶ 9.

  Warden Zatecky wrote a letter to IDOC central office regarding Mr. Wheeler's request for clemency in which he recommended that the clemency request be denied. Dkt. 33-4 (Letter). In the letter, Warden Zatecky listed Mr.

6

Wheeler's juvenile and adult criminal records and noted that he had received eight major (A or B) and 22 minor (C or D) conduct reports. *Id.* at 1. Warden Zatecky based his recommendation on information provided to him by the unit team at Putnamville. Dkt. 33-2 at ¶ 11. He did not intentionally make any misrepresentations or false statements in the letter. *Id.* Warden Zatecky attested that Mr. Wheeler's grievance activity about the conditions at Putnamville had no impact on the denials of his requests for transfer or his clemency request. *Id.* at ¶ 12.

### III.
### Discussion

Mr. Wheeler alleges that Defendants were deliberately indifferent to the excessive heat at Putnamville and his lack of access to clean clothes. He also alleges that Warden Zatecky retaliated against him for filing grievances by blocking his transfer and clemency requests.

**A. Eighth Amendment Conditions of Confinement**

Under the Eighth Amendment, which prohibits the imposition of cruel and unusual punishments, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must

7

establish that the defendants had a culpable state of mind—that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

    1.    **Heat-Related Conditions at Putnamville**

Under the evidence designated here, Mr. Wheeler's claim cannot survive summary judgment on the subjective component. Warden Zatecky testified that to combat the heat, inmates were provided fans and access to cold showers upon request and that the windows were to remain open for proper air flow. Dkt. 33-2 at ¶ 3. Indeed, Mr. Wheeler testified that he could take cold showers for relief from the heat and had access to water at all times unless Putnamville was on lockdown. Dkt. 33-1 at 17, 26. Further, Mr. Wheeler acknowledged that the windows in the dorm were generally left open in the summertime months. *Id.* at 21. The only designated evidence of Warden Zatecky's knowledge about the impact of the uncomfortable temperatures was Mr. Wheeler's grievance about the guards' closing grates. Dkt. 33-3. While Mr. Wheeler mentioned in the grievance that he had trouble breathing and sleeping due to the hot conditions, *id.* at 4, the main focus of the grievance was his belief that it was unfair to close the grates

8

when the inmate who had been shouting lived in another area of the prison, *see id.* at 1-4.

Warden Zatecky determined that, for security reasons, it was permissible for guards to close the window grates to deter inmates from yelling or throwing things out of the windows. Dkt. 33-2 at ¶ 4; *see Scarver v. Litscher*, 434 F.3d 972, 976-77 (7th Cir. 2006) (affirming summary judgment for defendants in a case involving heat in a segregation unit of a supermax prison because prison authorities must be provided "considerable latitude in the design of measures for controlling" inmates); *and Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979) ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.") (cleaned up). As discussed, Warden Zatecky provided inmates alternate means to combat the heat—namely access to cold showers and water. *Dixon*, 114 F.3d at 644. Considering the alternative means he provided for relief, the security rationale for occasionally closing the grates, and the lack of designated evidence that Warden Zatecky knew of specific health risks to Mr. Wheeler presented by the heat, he is entitled to summary judgment.

Commissioner Carter is entitled to summary judgment because there is no evidence of his personal involvement in monitoring temperature-related conditions at Putnamville. "Individual liability under § 1983 … requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). Mere "knowledge

9

of a subordinate's misconduct is not enough for liability." *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) (en banc). Indeed, "inaction following receipt of a complaint about someone else's conduct is [insufficient]." *Estate of Miller by Chassie v. Marberry*, 847 F. 3d 425, 428 (7th Cir. 2017).

Here, Mr. Wheeler wrote to Commissioner Carter about the hot temperatures. Dkt. 33-1 at 22. Commissioner Carter responded but did not resolve the issue. *Id.* That is insufficient to create a question of material fact given Commissioner Carter's role as an administrator over the IDOC system rather than Putnamville in particular. Moreover, that correspondence is not in the designated evidence and there is no evidence that Commissioner Carter knew that the hot dorm temperatures caused risk to Mr. Wheeler's health. Further, Mr. Wheeler's contention that Commissioner Carter was at Putnamville and ordered the windows to be closed is based on hearsay, and therefore does not create a dispute of material fact. Dkt. 33-1 at 18 (Mr. Wheeler's deposition testimony that he was told by an IDOC staff member that Commissioner Carter ordered the windows to be closed); *see MMG Fin. Corp. v. Midwest Amusements Parks, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment.").

For these reasons, both Defendants are entitled to summary judgment on Mr. Wheeler's claims related to the heat.

### 2. Clean Clothing

A lack of access to adequate clothing may constitute an Eighth Amendment violation. *See Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014)

(failing to provide inmate with any clothes or shoes for a period of weeks states a claim under the Eighth Amendment); *Gillis v. Litscher*, 468 F.3d 488, 490-91, 493-94 (7th Cir. 2006) (inmate provided with no clothing, bedding, or mattress for several days and forced to sleep on concrete floor in cold conditions survived summary judgment on an Eighth Amendment claim). But discoloration and "[d]eficiencies in . . .freshness alone, however, do not fall short of the minimal necessities that the Eighth Amendment requires for basic dignity." *Myers v. Ind. Dep't of Corr.* 655 F. App'x 500, 504 (7th Cir. 2016).

Here, there is no evidence in the designated evidence that Defendants were deliberately indifferent to a risk to Mr. Wheeler's health. With respect to Commissioner Carter, there is no designated evidence that he was aware of the laundry issue. With respect to Warden Zatecky, the designated evidence reflects that by the time he learned about the laundry issue from reviewing Mr. Wheeler's grievance, the problem had been resolved since Mr. Wheeler had received a new set of clothing the month before. Dkt. 33-5. Thus, given their lack of involvement and knowledge of the situation while Mr. Wheeler was experiencing the discomfort of wearing soiled clothes, they are entitled to summary judgment. *Thomas*, 2 F.4th at 721 (affirming summary judgment on subjective prong where defendants responded reasonably to plaintiff's complaints about cell conditions by replacing soiled mattress, providing cleaning supplies, and giving him access to hot water).

11

### B. First Amendment Retaliation

To survive summary judgment on a First Amendment retaliation claim, Mr. Wheeler must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) he engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendant's decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to Warden Zatecky to show that the deprivation would have occurred even if Mr. Wheeler had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 668, 680 (7th Cir. 2020). If he can make that showing, the burden shifts back to Mr. Wheeler to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

Warden Zatecky does not dispute that Mr. Wheeler engaged in protected activity or that he suffered a deprivation. So, the issue is whether Mr. Wheeler has designated evidence that would allow a jury to find that his filing of grievances was a motivating factor behind Warden Zatecky's denial of his request to be transferred or his recommendation to deny Mr. Wheeler clemency.

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly

12

retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013).

Here, Mr. Wheeler believed that Warden Zatecky was irritated by his grievance filings when he transferred to Putnamville in March 2021, which caused Warden Zatecky to deny Mr. Wheeler's transfer request to a lower security facility in April 2021. Dkt. 33-1 at 29. "Suspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Manuel*, 966 F.3d at 680 (cleaned up). Further, the undisputed evidence is that Warden Zatecky was not involved in decisions regarding inmates' transfer requests. Dkt. 33-2 at ¶ 9. Rather, inmates sent requests to the classification department at IDOC central office, who would then consult with the unit team at Putnamville to process the request. *Id.* at ¶ 7. There is no designated evidence from which a reasonable jury could find a causal link between Mr. Wheeler's filing of grievances and the denial of his transfer request, at least with respect to Warden Zatecky.

For the clemency request, Warden Zatecky wrote a letter recommending that Mr. Wheeler's clemency bid be denied. Dkt. 33-4. But the undisputed designated evidence shows that he provided the information about Mr. Wheeler's criminal and conduct history based on information he received from the unit team, and that he did not intentionally make any false statements in the letter. Dkt. 33-2 at ¶ 11. Mr. Wheeler has not designated evidence showing that the statements in the letter were incorrect. Although Mr. Wheeler alleged that

13

Warden Zatecky mistakenly told the clemency board that Mr. Wheeler had amassed several major conduct reports, he did not specify whether these conduct reports were an A level or B level. Dkt. 33-4 at 1. Mr. Wheeler acknowledged that he had received several B level write-ups for possessing a phone. Dkt. 33-1 at 34-35. Thus, no reasonable jury could find that Warden Zatecky recommended against clemency due to Mr. Wheeler's grievances.

Because the undisputed evidence demonstrates that Warden Zatecky was not motivated by retaliatory animus, he is entitled to summary judgment.

## IV.
## Conclusion

For the foregoing reasons, Defendants' unopposed motion for summary judgment is **GRANTED**. Dkt. [32].

Final judgment consistent with this Order and the Court's November 1, 2022, Screening Order will issue in a separate entry.

**SO ORDERED.**

Date: 9/27/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

TRACEY WHEELER
1341 2nd Ave
Terre Haute, IN 47807

All Electronically Registered Counsel